IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 1, 2009

## JEVON BRYANT v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 01-08322-33     James C. Beasley, Jr., Judge**

_____

**No. W2009-00229-CCA-MR3-PC  - Filed July 19, 2010**

_____

The petitioner, Jevon Bryant, appeals the denial of post-conviction relief.  On appeal, he argues that:  counsel was ineffective; the trial court erred in denying his request to wear his wedding ring at trial; the prosecution made improper comments during voir dire; his prior felony should not have been stipulated for admission; his relatives were improperly banned from the courtroom; and his right to the Confrontation Clause was violated.  After careful review, we affirm the judgment from the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Douglas A. Trant, Knoxville, Tennessee, for the appellant, Jevon Bryant.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; William L. Gibbons, District Attorney General; and Michael McCusker and Jennifer Nichols, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The petitioner's convictions in this case rise from his actions in the commission of especially aggravated kidnapping and aggravated robbery against seven victims.  The facts, as presented in the opinion on direct appeal, are:

> The proof presented at trial reflects that Kimberly Hancock was at her home on January 11, 2001, when she received a phone call from a friend requesting she come by and pick up some clothes. After receiving the call, she

asked Divin Wright (her boyfriend), and Omar Coleman to accompany her. The group took Omar's white Ford Focus. Upon arrival at the house, Kimberly and Divin went inside to pick up the clothes while Omar waited outside in the car. Inside the house, Kimberly saw Defendant Talley, Thaddeus Brown, John Williams, and Jarvis Williams. As Kimberly proceeded upstairs, John Williams grabbed her by the neck and threw her down the stairs. He then picked her up from the floor, placed her on the couch, and proceeded to question her about her boyfriend's brother, Oliver Wright, whom John Williams believed orchestrated a break-in of his home. Divin was also forced to sit on the couch and questioned about the break-in. The group of men including Defendant Talley threatened to kill Kimberly and Divin if they did not tell them what they wanted to know. Divin was also told to remove his clothes. At this time, Kimberly saw that Defendant Talley and the Williams' brothers had guns.

After Kimberly and Divin were questioned for a few minutes, Thaddeus Brown and Defendant Talley went outside. According to Omar Coleman, he was approached by three armed men and brought into the house under the pretense that he was under arrest. He was then forced to take off his clothes, and his checkbook, credit cards, and drivers license were taken. At this time, Defendant Bryant arrived at the house armed with two guns. Upon arrival, Defendant Bryant brandished his guns and exclaimed, "I want the bitch who set it up." Jarvis Williams told Kimberly that she was going to help find Oliver Wright. Jarvis Williams and Defendant Bryant then forced Kimberly into a black Ford Probe and left. After Jarvis Williams and Defendant Bryant left with Kimberly, Defendant Ezell entered the house wielding a shotgun. Defendants Ezell and Talley then proceeded to beat Divin with their fists and guns.

After Oliver Wright was located, Jarvis Williams called him on the phone and asked if he would pick him up and take him to Auto Zone to get a battery. Oliver agreed. Thereafter, Jarvis Williams and Defendant Bryant met up with Thaddeus Brown and Defendant Ezell. At this time, Kimberly was moved to the backseat of a purple Dodge Intrepid. Defendant Ezell also sat in the backseat, armed with a shotgun. Later, Oliver arrived in a Dodge Neon accompanied by Jerome Carpenter, Tonyell Somerville (Oliver's girlfriend), and Jodeci Somerville (Tonyell's seven-year-old son). When Oliver and company arrived, Oliver got out of the car. Immediately, Defendants Bryant

and Ezell, armed with guns, walked to Oliver's car and told him "[d]on't move. You niggers gonna die tonight."

Both Oliver and Jerome were forced to take off their clothes. Defendant Bryant hit Oliver in the head with a gun after Oliver asked what was going on. Oliver was forced into the trunk of the Intrepid, and Jerome was forced into the trunk of the Neon. In an attempt to get out of the trunk, Oliver put his leg out. While his leg was hanging out, Defendant Bryant closed the trunk on Oliver's leg, breaking it. With Defendant Ezell driving the Neon, the group left the area and drove to a different area of town. Here, Defendant Ezell took Tonyell Somerville's jewelry, cash, and purse. Defendant Ezell then ordered Tonyell and her son, Jodeci, out of the Neon. Before Tonyell left the car, however, Defendant Ezell told her to [hand over] her identification. After Tonyell complied, Defendant Ezell told her that "we've got your ID, we have your address, we know where you live, we know what you look like. If we get caught, if we go to jail, if you call the police, we'll come back and kill you and your son." In the meantime, Jerome was taken out of the Neon's trunk and placed in the Intrepid's trunk with Oliver. A short time later, Kimberly was dropped off near her mother's house. Before being released, she was threatened with death if she called the police. However, both Kimberly and Tonyell called the police after being released.

Meanwhile, the defendants returned to the house with Jerome and Oliver. The defendants, along with the other assailants, placed Oliver and Divin in the middle of the floor and beat them with their fists and guns. Defendant Ezell also struck Omar in the back of the head with his shotgun. In addition to being beaten, Oliver was burned with cigarettes and Divin was burned after being tossed headfirst into a fireplace. The defendants then poured bleach on Oliver, Divin, Omar, and Jerome. The defendants informed these men that they would be taken to Mississippi and killed; whereupon, the defendants forced the men once again into the trunks of their vehicles and started driving toward Mississippi. However, shortly after leaving the house, police officers initiated pursuit, which led to the release of the four men from the confines of the trunks and the eventual arrest of the defendants.

*State v. Talley*, W2003-02237-CCA-R3-CD, 2006 Tenn. Crim. App. LEXIS 802, at **4-8 (Tenn. Crim. App. at Jackson, Oct. 16, 2006).

During the post-conviction hearing, Jerome Carpenter testified that he was a victim

in the case and that he initially identified the petitioner as a perpetrator of the offenses. During the post-conviction hearing, he said that the petitioner was not part of the group that kidnapped, robbed, and assaulted him. Carpenter testified that the petitioner actually helped him. He acknowledged that he had originally identified the petitioner in a photo line-up and indicated that the petitioner attacked two of the victims. Carpenter also acknowledged that he previously told police that the petitioner was armed with a gun on the night of the attacks. Carpenter further acknowledged that he entered a plea of guilty to attempting to coerce witnesses in this case. He testified that he identified the petitioner because of threats from other inmates; however, after further questioning, he admitted that he gave his statement before he was arrested and jailed.

The petitioner's mother testified that the trial judge excused her and her daughter-in-law from the courtroom because she was harassing witnesses. However, she denied harassing witnesses.

Tonyell Somerville testified that she was unsure about her identification of the petitioner. She said she was engaged to another victim, Oliver Wright. She testified that she was afraid of Wright, who told her there would be "serious issues at home" if she did not implicate the petitioner. She said that she identified the petitioner both in a photograph line-up and at trial. She acknowledged that she told the police that the petitioner was armed and that he made the victims get out of the car. She further acknowledged that she made her statement to police before she spoke to Wright.

Assistant District Attorney General Ray Lepone testified that he worked on the petitioner's trial. He testified that Carpenter threatened to kill Oliver and Devon Wright if they showed up for court and testified against the defendants. He testified that even though Ms. Somerville was afraid of the petitioner and his co-defendants, she was very cooperative and never indicated that her identification of the petitioner was not accurate.

William Massey, who was the petitioner's trial counsel, testified that his investigator interviewed Carpenter on October 28, 2002, and placed the petitioner at the scene assaulting one of the victims. He said that he did not call Carpenter as a witness because his statement would not have been beneficial to the defense. Massey also testified that he believed comments about credibility made by the State during voir dire were actually part of the jury instructions.

Analysis

In his first issue on appeal, the petitioner argues that he is entitled to post-conviction relief because the trial court would not allow him to wear his wedding ring during his trial.

The State submits, and we agree, that the petitioner's claim should have been presented on direct appeal and is not proper on post-conviction. Tennessee Code Annotated section 40-30-106(g) provides that:

> [a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
>
> > (1)  The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
> >
> > (2)  The failure to present the ground was the result of state action in violation of the federal or state constitution.

T.C.A. § 40-30-106(g) (2006). The petitioner's claim regarding his wedding ring is not based on a new constitutional right and was not omitted from the direct appeal because of any action of the State. The petitioner also argues that the prosecution improperly commented on his right to remain silent during jury voir dire. This issue should also have been raised on direct appeal. Therefore, it is not proper for post-conviction relief because the issue is not based on a constitutional right which was not recognized as existing at the time of trial, nor was the failure to present the issue on direct appeal a result of state action in violation of either the state or federal constitution. The petitioner also argues that he was denied the right to a public trial when his mother and his wife were removed from the courtroom and that he was denied the right to confront witnesses because the trial court instructed him not to stare down witnesses. Because these issues should have been raised on direct appeal and are not proper for post-conviction relief, they are waived.

Next, the petitioner argues that trial counsel was ineffective for failing to object to the stipulation of notification of his prior felony conviction rather than stipulating to its introduction. This court reviews a claim of ineffective assistance of counsel under the standards of *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975), and *Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687; *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996); *Butler v. State*, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order and need not address both if one

component is not met. *Goad*, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The test in Tennessee to determine if counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. *Strickland*, 466 U.S. at 689; *State v. Honeycutt*, 54 S.W.3d 762, 769 (Tenn. 2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002) (citing *Strickland*, 466 U.S. at 689). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997); *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

As noted, the petitioner argues that counsel was ineffective for not objecting to the stipulated proof of his prior felony conviction. The State argues that the petitioner has also waived this issue pursuant to Tennessee Court of Criminal Appeals Rule 10(b), because he failed to cite authority and failed to make any argument explaining how trial counsel was ineffective or how the outcome would have been different if trial counsel had objected. The petitioner's entire argument on appeal is as follows:

> Trial counsel should have objected instead of stipulating to the notification of the prior felony of the defendant. . . . It is the law in our state and in the federal system that if one agrees to stipulate the prior felony, details of it are not to be disclosed to the jury. *State v. James*, 81 S.W.3d 751 (Tenn[.] 2002); *Old Chief v. United States*, 519 U.S. 172 (1977).

Tennessee Rule of Appellate Procedure 27(a)(7) states that a brief shall contain:

[a]n argument, which may be preceded by a summary of argument, setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on.

We acknowledge that the brief of the petitioner's argument regarding this issue is abbreviated, but it does contain adequate argument for this court to understand his contention that trial counsel should have objected to the introduction of his prior felony conviction. However, he has not met his burden of demonstrating how this decision was deficient or that he was prejudiced by trial counsel's decision. Therefore, he is not entitled to relief on this issue.

Next the petitioner argues that he was deprived of the right to due process because the State withheld evidence of an improper photographic line-up from him and that counsel was ineffective for failing to file a motion to suppress the line-up. Again, the State argues that the petitioner's issue is waived because of an inadequate brief. The petitioner's brief on this issue contains no citation to authority and merely summarizes the testimony from a witness. This issue is waived as the petitioner has failed to cite authority to support his argument. Tenn. Ct. Crim. App. R. 10(b); *State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997).

Next, the petitioner argues that trial counsel was ineffective for failing to call Jerome Carpenter as a witness. He contends that Carpenter would have testified that the petitioner did not kidnap or rob him, as he testified during the post-conviction hearing. During the post-conviction hearing, trial counsel testified that he was aware of Carpenter but decided not to call him as a witness based on his investigator's interview with Carpenter. Trial counsel testified that Carpenter gave a statement placing the petitioner at the scene of the crime and that he told police that the petitioner was assaulting people at the scene. Trial counsel decided that calling Carpenter was not beneficial to the petitioner's defense. Carpenter also testified at the post-conviction hearing that he entered a guilty plea to coercing two witnesses in the petitioner's case. The post-conviction court determined that Carpenter was not credible and that trial counsel would have been ineffective if he had called Carpenter to testify. Based on the record, the petitioner has not demonstrated that counsel was deficient for failing to call Carpenter as a witness; therefore, he is not entitled to relief on this issue.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgment from the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE